# UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

FILED
IN CLERK'S OFFICE

2004 JUL 19  P 4: 52

U.S. DISTRICT COURT
DISTRICT OF MASS

Civil Action No. 04-10502-RWZ

**EDWARD H. LYNCH JR.,**
    Petitioner

v.

**EDWARD FICCO,**
        Respondent.

### PETITIONER'S REPLY TO RESPONDENT'S OPPOSITION TO PETITION FOR A WRIT OF HABEAS CORPUS, AND MEMORANDUM IN SUPPORT OF PETITION

Counsel for Petitioner:
Emanuel Howard, BBO No. 241740
P.O. Box 66067
Newton, MA 02466-0002
TEL. (617) 965-4042;  FAX (617) 965-3793

## TABLE OF CONTENTS

STATEMENT OF THE CASE....................................................................1

STATEMENT OF THE FACTS................................................................2

ARGUMENT........................................................................................6

A. THE HABEAS CORPUS STANDARD................................................6

B. INEFFECTIVE ASSISTANCE OF COUNSEL STANDARD...................9

C. REASONS FOR GRANTING THE PETITION.....................................12

Ground one:  Given that malice was an element of murder, and the trial judge told the jury that all instructions were equally important, the state court violated federal due process by allowing the murder conviction even though several renditions of irreconcilable instructions regarding factors negating malice effectively relieved the Commonwealth of the burden of proving malice beyond a reasonable doubt..........................................12

1. Introduction...............................................................................12

2. The law in Massachusetts on murder and mitigating factors negating malice..............................................................................................14

    (a)  Statutes on murder and manslaughter...............................14

    (b)  The three prongs of malice, as an element of murder............15

    (c)  When there is evidence of mitigating factors, e.g., provocation or sudden combat, that might reduce the crime of murder to manslaughter, the state has the burden of proving a reasonable doubt that defendant did not act in the heat of passion......................................................................................15

    (d)  The evidence would permit a finding of manslaughter rather than murder...........................................................................16

3. The trial judge's irreconcilable instructions raised the reasonable likelihood that the jury took them to mean that the Commonwealth had the burden to prove, rather than to disprove, mitigating factors negating malice beyond a reasonable doubt....................................................18

4. The SJC's decision violated due process, because it effectively relieved the state of the burden of proof beyond a reasonable doubt on the critical question of intent-related malice......................................................20

5  If petitioner's ground one claim was not sufficiently preserved in the trial court, such so-called "procedural default" is excused by his trial counsel's ineffectiveness................................................................24

6.  The state court decision is contrary to clearly established Supreme Court precedent, or constitutes an unreasonable application of relevant Supreme Court precedent. 28 U.S.C. § 2254(d)(1)............................27

7.  Habeas relief is merited under any appropriate "harm" standard..28

Ground two:  Petitioner was deprived of effective assistance of counsel when his counsel failed to call one or more witnesses in the Motion To Suppress hearing who would have bolstered the testimony of defendant's two lay witnesses, would have provided stronger evidence for defendant's expert pharmacologist on which to base his opinion concerning the involuntary aspect of defendant's custodial statements, and would have helped defendant to suppress those statements used against him at trial.....................................................................................................29
AND
Ground three:  Petitioner was deprived of effective assistance of counsel to call one or more of those same witnesses at trial, where their testimony would have been benefited defendant to refute the trial testimony of police officers on the circumstances surrounding defendant's arrest and interrogation and to provide stronger, credible evidence (in addition to testimony from the same two lay witnesses and defendant) for defendant's expert pharmacologist to base his opinion on whether defendant's custodial statements were voluntary. In addition, diminution of the officers' credibility would have increased defendant's credibility in general, and in particular on his testimony concerning his struggle with the decedent, Andrea Geremia, and his testimony conflicting with police officers' and Steven Moosick's, thereby enhancing his self-defense and negation of malice theories................................29

1.  Grounds two and three: Missing evidence on custodial statements: Introduction.................................................................................30

2.  Ground two: Missing evidence on custodial statements (at motion to suppress hearing)......................................................................31

3.  Ground three: Missing evidence on custodial statements (at trial)....42

4.  The SJC's discussion of the claims did not amount to a determination worthy of deference by a federal court, but if it was a determination, its analysis and determination is objectively unreasonable, and it contravenes, and constitutes an unreasonable application of U.S. Supreme Court precedent................................................................44

(a) The SJC's inappropriate approach to the facts.................................44

(b) What the SJC unreasonably overlooks and misapprehends on the *Strickland* prongs...........................................................................44

Ground four:  Petitioner was deprived of effective assistance of counsel when his counsel failed to pre-test and rehearse the in-court reenactment, during which counsel used himself as a stand-in for the decedent, Geremia, so that it would not backfire on counsel or his client. The hoped-for purpose of reenactment was to have defendant show the jury how he struggled with Geremia. Defense counsel is at least a foot taller than Geremia, thus making it physically awkward for defendant to accurately demonstrate. This permitted the prosecutor to have the defendant make the same physically awkward demonstration using the prosecutor as a stand-in, thus permitting the prosecutor to remark adversely upon the physical awkwardness in closing argument for the purpose of diminishing defendant's credibility and his self-defense theory.....................................................................................................51

1.  Trial counsel was ineffective in preparing for the struggle demonstration...........................................................................................51

2.  Defense counsel's conduct fell below professional norms for an in-court demonstration.................................................................................52

3.  The SJC"s discussion of the claim did not amount to a determination worthy of deference by a federal court, but if it was a determination, its analysis and determination is objectively unreasonable, and it contravenes, and constitutes an unreasonable application of U.S. Supreme Court precedent...................................................................54

(a) The SJC's inappropriate approach to the facts...........................54

(b)) What the SJC unreasonably overlooks and misapprehends on the *Strickland* prongs.......................................................................54

(c) The SJC's determination was unreasonable because the "manifestly unreasonable" test requires a fully informed counsel.....60

D.  EVIDENTIARY HEARING REQUESTED..........................................62

CONCLUSION.....................................................................................64

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

Civil Action No. 04-10502-RWZ

EDWARD H. LYNCH JR.,
        Petitioner

v.

EDWARD FICCO,
        Respondent.

### PETITIONER'S REPLY TO RESPONDENT'S OPPOSITION TO PETITION FOR A WRIT OF HABEAS CORPUS, AND MEMORANDUM IN SUPPORT OF PETITION

The petitioner hereby replies to respondent's opposition to his petition for writ of habeas corpus, and gives reasons why the petition should be granted.

### STATEMENT OF THE CASE[1]

The Massachusetts Superior court, Neel, J., sentenced petitioner, Edward H. Lynch Jr. (petitioner, Lynch, or defendant) to a life term without parole upon his February 23, 1995 conviction for first-degree murder (G.L. c. 265 §1) by deliberate premeditation and by extreme atrocity and cruelty of Andrea Geremia (Geremia) by a jury [A. 1, 7, 26]. He filed a timely notice of appeal [A. 27]. After undersigned post-

---

[1] Respondents purportedly supplied the court with copies of the state court materials in connection with its supplemental answer. Petitioner will herein refer to these materials as follows: those to the trial transcripts will be [volume number/page number]; those to the Appendix to petitioner's primary appellate brief filed with the Massachusetts Supreme Judicial Court will be [A. number]; those to the Appendix filed with his supplemental brief will be [S.A. number]; those to his primary brief will be [DB page number]; those to his Reply brief will be [Reply B page number].

conviction counsel was assigned to represent him, petitioner, moved for stay of proceedings, and filed motions for new trial, for funds, and for other post-conviction relief [A. 28, 30, 330, 337, 357]. Those motions were denied [A. 365]. Notice of appeal was filed along with a request for consolidation [A. 382]. The Supreme Judicial Court of Massachusetts (SJC), on the consolidated appeals from the conviction and from the trial court's denial of the motions, affirmed. *Commonwealth v. Lynch*, (Lynch) 439 Mass. 532, 789 N.E.2d 1052, rehearing denied (2003).

Petitioner timely filed the instant petition.

### STATEMENT OF THE FACTS

Lynch first met decedent, Andrea Rose Geremia (Geremia), at a Taunton, Massachusetts bar on June 6, 1992 during his June 5-6 weekend drinking "bender" [6/140, 143-157]. After she and he exchanged promises of sex for $50.00, they went by taxicab that afternoon to his cottage on a pig farm in Lakeville, Massachusetts where he had been working since August 1991 [6/147-163]. Geremia and Lynch had a friendly conversation while in the taxicab and, upon arrival at the road leading uphill to the farm, Lynch asked the taxicab driver to stop and let them out. After some talk, Lynch asked the driver to take them up to his cottage. Geremia told the driver that she would call in about thirty minutes [2/154-155, 158, 165-166].

Lynch took the witness stand and recounted what happened next. Only Geremia and he were in the cottage at that time. Once in the

2

cottage, he and Geremia conversed. He drank some more, gave Geremia a soft drink, gave her a shirt to wear against the chill, gave her the $50.00 he took from a bureau drawer where he kept his cash, saw her put the cash under her T-shirt, passed out before sex could be consummated, awoke to the sound of the bureau drawer being closed, saw Geremia "heading towards the kitchen with her hand down her front," concluded that she had taken the rest of his cash, followed her into the kitchen, saw her with his kitchen boning knife in her hand pointed at him, while saying to him, "stay away or I'll cut you, or stick you or something to that effect [6/164-173]."

Defendant approached; he asked for his knife and money. Geremia lunged forward, and then kneed defendant in the groin, causing him to go down on one knee. He grabbed hold of her right arm, struggled with her, and tried to keep the knife away from him. During the struggle, he became aware that she sustained a stab wound [6/173-176].[2] Trial counsel had Lynch leave the witness stand to show the jury how he struggled with Geremia. Petitioner was deprived of effective assistance of counsel when his counsel failed to pre-test and rehearse the in-court reenactment so that it would not backfire on counsel or his client. Counsel used himself as a stand-in for the decedent. Defense counsel is

---

[2] Evidence showed five "fatal" stab wounds in Geremia's thoracic-abdominal area (plus non-fatal thigh and buttock wounds) [5/225-235, 239-240]. The prosecutor contended that defendant had the knife in his hand while inflicting all seven stab wounds.

3

at least a foot taller than Geremia, thus making it physically awkward for defendant to accurately demonstrate. This permitted the prosecutor to have the defendant make the same physically awkward demonstration using the prosecutor as a stand-in, thus permitting the prosecutor to remark adversely upon the physical awkwardness in closing argument for the purpose of diminishing defendant's credibility and his self-defense theory. See ground four, *post.*

Geremia died in the kitchen. Lynch cleaned up and buried her the next day, using a front-end loader to place her into a long trench used as a pig grave. He remained at work for eight more days. He then placed his belongings in the farm owner's pick-up truck and drove away in it [6/179-187; 3/106-107].

Geremia's family filed a missing person's report on June 9 [2/115]. Police investigation led to the taxicab driver, and then to Mr. Lynch.[3] Geremia's whereabouts remained unknown to the police until, on information obtained from a volunteer informant, the Massachusetts State Police used a back hoe to unearth her on January 4, 1993. The information came from a just released inmate from the Plymouth (Massachusetts) House of Correction who repeated what he was told by another inmate, Steven Moosick. Moosick and Lynch were fellow inmates

---

[3] He was in the Bristol (Massachusetts) House of Correction when the police questioned him there on June 23 and on July 30, 1992. Neither the questioning nor other police investigation revealed her whereabouts [3/87-101, 106-107, 126-131, 136-143].

in that institution; Lynch confided in Moosick while the former was then serving a six month sentence there [3/144, 147-153; 4/92-96, 101].

Lynch had been released from the incarceration by the time he was arrested on January 4, 1993. Massachusetts state police officers found him about 9:30 p.m., sleeping on the floor of the Brockton, Massachusetts apartment of two drinking friends, Patricia MacDonald (Pat) and Donald Podzka (Don) [5/133-137]. This was after Lynch, Pat and Don had been in the apartment on a seventeen day drinking binge, consuming large quantities of vodka and beer through the 1992-1993 Christmas-New Year period up to and including the day of his arrest [6/74-83, 105-110]. According to Massachusetts state police (MSP) Sgt. Loud at trial, Lynch told her during the ensuing post-arrest interrogation that: Geremia grabbed the knife; he then grabbed the knife from her and stabbed her; he used his right hand and stabbed her in the stomach on the right side.

Thus, the question of who held the knife during the stabbing was a critical one and hotly contested. Before trial, petitioner moved to suppress the alleged custodial interrogation statements attributed to him by Sgt. Loud. Paragraphs 4 and 7 of the defendant's Amended Motion to Suppress relate to custodial statements he allegedly made to police officers on the night of his arrest [A. 18-19, 24]. The motion was denied. Petitioner challenged the statements on similar grounds at the trial. In his post-conviction motions and appeals, petitioner claimed that trial

5

counsel was ineffective for failing to bring in witnesses on this topic at the motion hearings and at trial, and that there is a reasonable probability that their evidence would have made a difference in the result. See grounds two and three, *post*.[4]

The trial judge instructed the jury on murder, self-defense, and excessive force in self-defense. In addition, he gave a set of instructions on mitigating circumstances (heat of passion on provocation, sudden combat) negating malice, permitting a verdict of voluntary manslaughter. Petitioner claimed post-conviction that this latter set of instructions contained irreconcilable contradictions which deprived him of due process. See ground one, *post*.

## ARGUMENT

### A.  THE HABEAS CORPUS STANDARD.

The standard for reviewing the instant petition for writ of habeas corpus is set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Because the petitioner is in state custody, his application for habeas review is controlled by 28 U.S.C. § 2254(d)(1). Within § 2254(d)(1), there are two categories of state court decisions that can qualify for the issuance of a writ of habeas corpus. "The first category embraces cases in which a state court decision directly contravenes Supreme Court precedent." *Williams v. Matesanz* (*Matesanz*),

---

[4] Additional facts will be stated where pertinent to the grounds for issuing the writ as they are discussed below.

230 F.3d 421, 424 (1st Cir. 2000). A state court decision is contrary to clearly established Supreme Court precedent "if that decision applies a rule that contradicts a rule clearly articulated by the Supreme Court or if the state court confronts a set of facts that are materially indistinguishable from an earlier Supreme Court decision, yet arrives at a result that differs from that precedent." *Mastracchio v. Vose (Mastracchio)*, 274 F.3d 590, 597 (1st Cir. 2001).

The second category of state court decisions that can qualify under § 2254(d)(1) are those cases "in which a state court decision, although not 'contrary to' relevant Supreme Court precedent, nonetheless constitutes an 'unreasonable application' of relevant Supreme Court precedent." *Matesanz,* 230 F.3d at 424. This can occur in a case where "a state court correctly identifies the applicable federal rule but applies it in an unreasonable manner to the facts of a particular case." *Id.* at 425; see also *Mastracchio,* 274 F.3d at 597. This can also occur where "the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *(Terry) Williams v. Taylor,* 529 U.S. 362, 407 (2000).

There is a third category of state court decisions that qualify for the issuance of a writ of habeas corpus. That is, when a state court adjudication "resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2252(d)(2).

On the issue of factual determinations, we must be careful to apply them only in the proper fashion. "For this purpose, factual issues are defined as basic, primary, or historical facts: facts in the sense of a recital of external events and the credibility of their narrators. *Townsend v. Sain,* 372 U.S. 293, 309 n. 6, 83 ... (1963) ...." (as quoted in *Bryson v. Ward* 187 F.3d 1193, 1211(10th Cir. 1999) (internal citations and quotation marks omitted); *Sanna v. DiPaolo,* 265 F.3d. 1 (1st Cir. 2001) (same; "it would be wholly inappropriate for a federal court to repastinate soil already thoroughly plowed and delve into the veracity of the witnesses on habeas review."). *Id.* at 7, 10. See, also, *Wiggins v. Smith,* ___ U.S.___, 123 S.Ct. 2527, 2539 (2003) (factual error that "social service records ... recorded incidences of ... sexual abuse,"); *Miller-El v. Cockrell,* 537 U.S. 322, 340 (2003) (discussion in terms of federal court's authority to disagree with a state court's credibility determination); *Norton v. Spencer* 351 F.3d 1, 6-7 (1st Cir. 2003) (similar, on credibility of affiants and factual determinations by state courts within the meaning of § 2254(e)(1)).

The standard for reasonableness is an objective one. The First Circuit set forth the current parameters of a standard for unreasonableness in *McCambridge v. Hall* (*McCambridge*), 303 F.3d 24 (1st Cir. 2002) (*en banc*), thereby, overruling the "outside the universe of plausible, credible

8

outcomes" standard recited in *Matesanz, supra,* 230 F.3d at 425 and *O'Brien v. DuBois,* (*O'Brien*) 145 F.3d 16, 25 (1st Cir. 1998). *McCambridge* at 37. The *McCambridge* Court placed the range for what is an unreasonable application somewhere between the "too severe" readings and the "too lenient," and concluded that "some increment beyond incorrectness is required[;] [t]he increment need not necessarily be great, but it must be great enough to make the decision unreasonable in the independent and objective judgment of the federal court." *Id.* at 36 (citations and internal quotation marks omitted). The Court left, intact, the example set forth in *O'Brien, supra,* 145 F.3d 25: that "the state court decision may be unreasonable if it is devoid of record support for its conclusion or is arbitrary." *McCambridge* at 36-37.

A federal court can hardly defer to the state court on any constitutional issue that the state court did not address in that framework, so that the proper standard of review in that situation is de novo. *Watkins v. Murphy,* 292 F.3d 70, 75-76 (1st Cir. 2002).

**B. INEFFECTIVE ASSISTANCE OF COUNSEL STANDARD.**

*Strickland v. Washington* (*Strickland*), 466 U.S. 668 (1984) states the two-prong test under the Sixth and Fourteenth Amendments to the United States Constitution. First (performance), a "defendant must show that counsel's representation fell below an objective standard of reasonableness," measured, in part, according to prevailing professional norms. *Id.* 687-688. A "reasonably competent attorney" performs "within

the range of competence demanded of attorneys in criminal cases,"
*United States v. Cronic,* 466 U.S. 648, 655 (1984), citing authorities.
Second (prejudice), he "must show that there is a reasonable probability
that, but for counsel's unprofessional errors, the result of the proceeding
would have been different. A reasonable probability is a probability
sufficient to undermine confidence in the outcome." *Id.* 694. "The
governing legal standard plays a critical role in defining the question to
be asked in assessing the prejudice from counsel's errors. When a
defendant challenges a conviction [on grounds of ineffective assistance of
counsel], the question is whether there is a reasonable probability that,
absent the errors, the factfinder would have had a reasonable doubt
respecting guilt." *Strickland, supra,* 466 U.S. 695.

An ineffective assistance of counsel claim presents a mixed
question of law and fact. *Id.,* 466 U.S. at 698. This court is not bound by
the conclusions of the state courts that counsel rendered effective
assistance. *Anderson v. Butler,* 858 F.2d 16, 18 (1st Cir.1988). "The
*Strickland* principles for deciding ineffective assistance of counsel claims
are 'clearly established' for purposes of the AEDPA." *Ouber v. Guarino*
(*Ouber*), 293 F.3d 19, 26 (1st Cir. 2002).[5]

---

[5] "Inferences, characterizations of the facts, and mixed fact/law
conclusions are more appropriately analyzed under the 'unreasonable
application' prong of section 2254(d)(1). *Cf. Townsend v. Sain,* 372 U.S.
293, 309 n. 6, (1963) (stating that mixed questions of fact and law do not
fall within the purview of section 2254(d)(2)); *Sanna,* 265 F.3d at 7
(suggesting that only witness credibility and recitals of external events
qualify as basic or primary facts for purposes of section 2254(d)(2)).

As regards a claim that evidence was not brought before the factfinder due to ineffective assistance of counsel (petition, grounds one and two), the opinion in (*Terry*) *Williams v. Taylor, supra,* involving a federal habeas corpus petition claiming ineffective assistance, sets further governing standards. It (1) cites A.B.A. standards as an example for counsel's duty to investigate; (2) promotes the need to reweigh both evidence that came in at trial and evidence which did not, in order to determine what effect the latter evidence would have had on the trier of fact (here, as to whether the factfinder would have had a reasonable doubt), so that evidence which may sometimes be considered "cumulative" should still be used in the "reweighing" process; (3) mandates acceptance of the reality that, even if "not all of the additional evidence was favorable," evidence which would have helped defendant should have been presented to the fact finder; and (4) does not accept a counsel's "tactical decision" in simply relying upon what was available to him without further investigation as representation within an objective standard of reasonableness. *Id.* 529 U.S. at 394-399. The U.S. Supreme Court has decided that "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable

---

Inasmuch as 'both the performance and the prejudice components of the ineffectiveness inquiry are mixed questions of law and fact' for the purposes of federal habeas review, *Strickland,* 466 U.S. at 698, section 2254(d)(2) is of limited utility" on an ineffective assistance of counsel issue. *Ouber,* at 27.

professional judgments support the limitations on investigation."
*Strickland*, 466 U.S., at 690-691.

In this context, this court must first decide the merits of the
*Strickland* claim as if it were deciding it de novo. If the court finds that
defense counsel was ineffective, it then may go on to determine whether
the state court's decision was an "unreasonable application" of
*Strickland*. See Randy Hertz & James S. Liebman, 2 *Federal Habeas*
*Corpus Practice & Procedure* 1356 (4th ed. 2001 & 2002 Supp.) [*FHCPP*];
see also *(Terry) Williams v. Taylor, supra,* 529 U.S. 390-98 (Stevens, J.,
for majority, analyzing Williams' claim according to this sequence), 412-
16 (O'Connor, J., concurring, analyzing Williams' claim according to
this sequence; *Ouber v. Guarino, supra,* 293 F.3d 30. (analyzing claim
according to this sequence, and explaining that "[w]ere we sitting in
direct review, the foregoing analysis would lead us to find counsel's
performance constitutionally unacceptable. In the exercise of habeas
jurisdiction, however, we must take another step and evaluate the
reasonableness of the Appeals Court's contrary conclusion.").

## C. REASONS FOR GRANTING THE PETITION.

**Ground one**: Given that malice was an element of murder, and the trial
judge told the jury that all instructions were equally important, the state
court violated federal due process by allowing the murder conviction even
though several renditions of irreconcilable instructions regarding factors
negating malice effectively relieved the Commonwealth of the burden of
proving malice beyond a reasonable doubt.

## 1. Introduction.

Based upon petitioner's testimony about the events leading up to and including his struggle with Geremia and her death [6/164-176], the evidence "would permit a verdict of manslaughter rather than murder, [requiring that] a manslaughter charge should be given." *Commonwealth v. Brooks*, 422 Mass. 574, 578, 664N.E.2d 801, 805 (1996), quoted in *Commonwealth v. Little*, 431 Mass. 782, 785-786, 730 N.E.2d 304, 307-308 (2000).[6] As will be seen in the discussion below, "[m]alice, in the sense of the absence of provocation, was part of the definition of the crime [of murder]." *Patterson v. New York*, 432 U.S. 197, 216 (1977). But contrary to the requirements of *Mullaney v. Wilbur*, 421 U.S. 684, 697-698, 704 (1975), the trial judge's instructions frequently inverted the burden on the Commonwealth to prove the absence of mitigating factors negating malice.[7] These inversions were, in turn, "contrary to the Due Process Clause as construed in [In re] Winship [, 397 U.S. 358, 364

---

[6] Both *Commonwealth v. Brooks* and *Commonwealth v. Little* cite the authority of *Commonwealth v. Walden*, 380 Mass. 724, 726-727, 405 N.E. 2d 939 (1980).

[7] For purposes of this petition, an inversion is a misstatement of the law and occurs whenever the trial judge instructs and gives the jury the idea that the law requires the Commonwealth to prove mitigating factors, e. g., heat of passion as a result of reasonable provocation or on sudden combat beyond a reasonable doubt, rather than to prove the absence of the mitigating factors beyond a reasonable doubt. In section 3, *post,* petitioner sets forth at least seven instances of inversion. In current parlance, this has come to be called an "*Acevedo*" error, after *Commonwealth v. Acevedo*, 427 Mass. 714, 695 N.E. 2d 1065 (1998).

(1970)]." *Id*.[8] In the context of all of the instructions, they "created the significant possibility that the [petitioner] was erroneously convicted of murder in the first degree instead of manslaughter." *Commonwealth v. Boucher*, 403 Mass. 659, 663, 532 N.E.2d 37, 39 (1989).

2.  The law in Massachusetts on murder and mitigating factors negating malice.

(a)  Statutes on murder and manslaughter.

At the time of the trial, a Massachusetts statute defined murder, in pertinent part, as follows:

> Murder committed with deliberately premeditated malice aforethought, or with extreme atrocity or cruelty ..., is murder in the first degree. Murder which does not appear to be in the first degree is murder in the second degree. ... The degree of murder shall be found by the jury. G.L. c.265, § 1.

At the same time, another statute provided punishment for committing manslaughter, but did not define it (G.L. c. 265, §13; see *ante*, at 3).[9] As a result, the following needed to be developed by case law: the definitions for malice and manslaughter; the principle that the crime is manslaughter, and not murder, if malice is negated by mitigating circumstances, e. g., heat of passion as a result of reasonable

---

[8] "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship, supra*, 364.

[9] G.L. c. 265, § 2 provided the death penalty or imprisonment for life as punishment for murder, but the death penalty was declared unconstitutional. *Commonwealth v. Cruz*, 393 Mass. 150, 470 N.E. 2d 116 (1984); *District Attorney for the Suffolk District v. Watson*, 381 Mass. 648, 411 N.E. 2d 1274 (1980).

provocation or on sudden combat; and the proper placement of the

burdens of production and proof on mitigating circumstances.

(b) The three prongs of malice, as an element of murder.

Massachusetts case law delineated three prongs of malice for the

first-degree murder theories (deliberate premeditation, and extreme

atrocity or cruelty) upon which petitioner was tried and convicted.

> Malice as an element of murder may be proved by evidence
> establishing any one of three facts beyond a reasonable doubt: if,
> without justification or excuse, (1) the defendant intended to kill
> the victim (the so-called first prong of malice), or (2) the defendant
> intended to do the victim grievous bodily harm (the second prong),
> or (3) in the circumstances known to the defendant, a reasonably
> prudent person would have known that, according to common
> experience, there was a plain and strong likelihood that death
> would follow the contemplated act (the third prong).

Commonwealth v. Snead, 413 Mass. 387, n.1, 597 N.E. 2d 1346, 1347

n.1 (1992), citing Commonwealth v. Grey, 399 Mass. 469, 470 n. 1, 505

N.E.2d 171 (1987).

> (c) When there is evidence of mitigating factors, e.g., provocation
> or sudden combat, that might reduce the crime of murder to
> manslaughter, the state has the burden of proving beyond a
> reasonable doubt that defendant did not act in the heat of passion.

(i) "[T]he crime is voluntary manslaughter not murder, if malice is

negated by reasonable provocation or sudden combat (or at least

by a reasonable doubt that those conditions were absent)."

Commonwealth v. Boucher, supra, 403 Mass. 661, 532 N.E. 2d 39.

Without malice, an unlawful killing can be no more than

manslaughter. *Commonwealth v. Judge*, 420 Mass. 433, 437, 650 N.E. 2d 1242 (1995) (citations omitted).

(ii)  "[I]t is well established that if any view of the evidence in a case would permit a finding of manslaughter rather than murder, a manslaughter charge should be given." *Commonwealth v. Cyr*, 425 Mass. 89, 97, 679 N.E. 2d 550, 556 (1997), quoting *Commonwealth v. Walden, supra*, and citing additional authorities.

(iii)  When there is evidence of factors, e. g. provocation, that might reduce the crime to manslaughter, the Commonwealth has the burden of proving beyond a reasonable doubt, <u>that defendant did not act in the heat of passion</u>. *Commonwealth v. Greene*, 372 Mass 517, 519, 262 N.E. 2d 910, 911 (1977); *Commonwealth v. Johnson*, 372 Mass. 185, 192, 361 N.E. 2d 212, 216 (1977). "The correct rule is that, where the evidence raises the possibility that the defendant may have acted on reasonable provocation, the Commonwealth must prove, and the jury must find, beyond a reasonable doubt <u>that the defendant did not act on reasonable provocation</u>." *Commonwealth v. Acevedo*, 427 Mass. 714, 716, 695 N.E. 2d 1065, 1067 (1998) (emphasis supplied, citation omitted).

<u>(d)  The evidence would permit a finding of manslaughter rather than murder.</u>

In the instant case, petitioner courageously took the stand and testified that when he approached the decedent in his cottage, she had a

knife in her hand. She lunged forward to stab him. He grabbed her arm; she kneed him in the groin, causing him to go down on one knee. As he tried to push her away, she tried to swap hands with the knife and also slapped at him [VI/174]. When he first saw her with the knife, he was "scared." He did not know what she was capable of doing and he did not want to be cut. After she was stabbed, he started screaming at her. He could not believe it was happening [VI/176-177]. Trial counsel followed this up in his closing by describing what defendant said on the witness stand, and arguing that the defendant was "affected in some way by the behavior of his guest turned intruder [VII/159-161, 167]."

On a reasonable view of the evidence, the jury could then take the behavior of the decedent as a reasonable provocation that would have been likely to produce in an ordinary person such a state of passion, anger, fear, fright, or nervous excitement as would eclipse his capacity for reflection or restraint. They could take the petitioner's testimony on his emotional and physical reactions to decedent's conduct as evidence that what happened actually did create in him such a state of mind. See *Commonwealth v. Little, supra,* 431 Mass. 786, 730 N.E. 2d 307, quoting *Commonwealth v. Berry,* 431 Mass. 326, 727 N.E. 517 (2000). (quotation marks omitted).[10]

---

[10] At oral argument before the SJC, the Commonwealth admitted that there was sufficient evidence to require a manslaughter instruction pursuant to the above-referenced Massachusetts cases, and also admitted that the trial judge made errors by inverting the burden of proof on this topic.

3.  The trial judge's irreconcilable instructions raised the reasonable likelihood that the jury took them to mean that the Commonwealth had the burden to prove, rather than to disprove, mitigating factors negating malice beyond a reasonable doubt.

What follows is a summary and comment on the instructions, transcribed in volume 7, that the trial judge gave bearing on murder, mitigating circumstances negating malice, and the burden of proof on the absence of mitigating circumstances.[11]

(**N.B.**: bop = burden of proof;  brd = beyond a reasonable doubt).

(a)  All instructions equally important; do not single out some and ignore others [7/191];

(b)  Jury to accept entire law as it is given by judge [7/192];

(c)  Malice aforethought; three prongs defined [7/227-228];

(d)  Malice is not provocation; **judge will instruct more on voluntary manslaughter** [7/228;

(e)  **"If you find"** (implying that someone must prove the "hot blood" state of mind of the petitioner before malice is not proved) that death results when defendant was in hot blood on reasonable provocation or sudden combat, or use of excessive force in self-defense, then malice is not proved [7/228] **(inversion # 1)**;

---

[11] Analysis on the question of whether the petitioner "has been accorded his constitutional rights" in the instructions "requires careful attention to the words actually spoken to the jury." *Sandstrom v. Montana,* 442 U.S. 510, 514 (1979).

(f)  Extreme atrocity or cruelty defined: three elements including malice, plus special factors on extreme atrocity or cruelty [7/232-235;];

(g)  Second degree murder defined, two elements including malice [7/236-238];

(h)  Introduces **manslaughter as "lesser included offenses" – voluntary and involuntary** [7/238-239] **(inversion #2);**

(i)  Voluntary **manslaughter** - passions – sudden combat, **what Commonwealth must prove: three elements of manslaughter** [7/239-242] **(inversion # 3);**

(j)  Now judge says that Commonwealth has bop/brd that defendant did not act in heat of passion [7/242] (correct statement);

(k)  Then judge says Commonwealth has bop/brd that defendant did not act in heat of passion, and jury may not return a verdict of murder unless the Commonwealth meets this burden [7/244] (the "saving" instruction in *Commonwealth v. Fickling*, section 4, *post*, but thereafter followed by several inversions, see below);

(l)  Again judge raises issues of hot blood-passion: if not persuaded brd that intent did not arise in hot blood-passion, **so it's manslaughter if Commonwealth proves elements of that crime brd** [7/245] **(inversion #4);**

(m)  Judge recaps:  that **Commonwealth must prove brd provocation or sudden combat for it to be voluntary manslaughter** [7/246-247] **(inversion # 5);**

19

(o)  The judge's <u>last words</u> on manslaughter [7/250-251],

beginning at 7/250, line 23 were these:

"Please remember that the verdict of manslaughter is not a

compromise. It is a permissible verdict if, in your judgment, **the facts fit**

**the crime of manslaughter** rather than the crime of murder in the first

or second degree **if, in fact, you find the facts support a conviction of**

**any crime at all beyond a reasonable doubt**" **(inversion # 6)**.

Then at 7/251, line 13, "**If you find facts** which come within the

definition **of manslaughter** as I have described it **and that those facts**

**have been proved beyond a reasonable doubt**, then you may consider

it as a verdict. **If you do not conscientiously find these facts**, <u>then a</u>

<u>verdict of guilty of manslaughter is not appropriate</u>" **(inversion # 7)**.

<u>4.  The SJC's decision violated due process, because it effectively relieved</u>
<u>the state of the burden of proof beyond a reasonable doubt on the critical</u>
<u>question of intent-related malice.</u>

The SJC's decision unconstitutionally permitted conviction on

murder instead of manslaughter.

The Commonwealth admitted in oral argument that the evidence in

this case was appropriate for instructions on mitigating circumstances

negating malice, and conceded that the trial judge gave erroneous

instructions on that topic. But it then claimed, and the SJC ruled, that

the weight of correct and incorrect instructions in the instant case is

within the *Commonwealth v. Fickling*, 434 Mass. 9, 746 N.E. 2d 475

(2001) range, i.e., two correct statements of the law with a "saving