UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

Civil Action No.04-10502-RWZ

EDWARD H. LYNCH JR.,

     Petitioner

V.

EDWARD FICCO,, et al

     Respondents

**PETITIONER'S MOTION FOR RECONSIDERATION OF COURT'S
MEMORANDUM OF DECISION AND ORDER OF DISMISSAL**

The petitioner respectfully requests that the court reconsider its December 16, 2004 MEMORANDUM OF DECISION and December 17, 2004 ORDER OF DISMISSAL.[1] As grounds he says the following.

1. The initial substantive document dealing with the merits filed by petitioner was his Petition for Writ of Habeas Corpus.

2. The court has already ruled that said Petition is in compliance with Habeas Corpus Rule 2 (c).

3. The respondents in an earlier pleading mistakenly called the pages which are incorporated by reference in Pet. 7-8, paragraph 12, and attached to the end of the Petition, "a memorandum of law."

---

[1] Petitioner will refer herein to the court's Memorandum of Decision as M.O.D. page number, to the petition as Pet. page number, and to Petitioner's Reply to Respondent's Opposition to Petition for Writ of Habeas Corpus and Memorandum in Support of Petition as Reply and Supporting Memo page number.

2

4.  Among his prayers, Pet. at 9-10, contained in the Petition, he asked that:

> D.  The Court permit petitioner to respond to any affirmative defense raised by respondents in his answer; and
>
> I.  The Court allow petitioner sufficient time to brief the issues of law raised by this petition.

5.  The petitioner requested that he be given the opportunity (a) to respond to any affirmative defense raised by respondent in his answer, (b) to brief the issues of law raised by his Petition and to respond to any Opposition respondents actually file and, (c) that he be allowed at least thirty days after the docketing of such Opposition in which to respond.

6.  By endorsement dated 5/26/2004 granting respondent's motion for scheduling order, the court allowed petitioner the time and opportunity to file his "memorandum in support of the petition and in response to respondent's position."

7.  The reason that petitioner recites this history is that parts of the M.O.D. treat the Petition as the petitioner's last word on a particular topic, without reference to his Reply and Supporting Memo.

8.  Regarding <u>Ground One</u>, the internally contradictory and irreconcilable instructions on the burden of proving/disproving mitigating factors negating malice, the court, M.O.D. at 2, misapprehends the standard for showing prejudice. Petitioner says that ineffective assistance of counsel provides the "cause and prejudice" requirement for avoiding the "procedural default" of trial counsel's failure to raise a contemporaneous objection to the trial judge's instructions. The court appears to acknowledge that the "cause" aspect has been shown, but only refers to Pet. at 18 and calls what petitioner says therein speculation and

2

conjecture. M.O.D. at 2-3. The court, unfortunately, did not take notice of the fuller exposition and application of the pertinent law in petitioner's Reply and Supporting Memo at 25-29. The most appropriate standard for prejudice in the "cause and prejudice" analysis is in the *Kotteakos/Brecht/O'Neal/Sanna* line of cases referred to in petitioner's Reply and Supporting Memo at 28.[2] See also Randy Hertz & James S. Liebman, 2 *Federal Habeas Corpus Practice & Procedure* 1223-1225 (4th ed. 2001) ((best approach to the scope of "prejudice" for purposes of procedural default "seems to be to equate that term with the concept of harmful error applicable to habeas corpus proceedings under the rule of

---

[2] The pertinent foundation of this standard is stated in *Kotteakos* as follows:  "To weigh the error's effect against the entire setting of the record without relation to the verdict or judgment would be almost to work in a vacuum.... In criminal causes that outcome is conviction. This is different, or may be, from guilt in fact. It is guilt in law, established by the judgment of laymen. And the question is, not were they right in their judgment, regardless of the error or its effect upon the verdict. It is rather what effect the error had or reasonably may be taken to have had upon the jury's decision. The crucial thing is the impact of the thing done wrong on the minds of other men, not on one's own, in the total setting....
This must take account of what the error meant to them, not singled out and standing alone, but in relation to all else that happened. And one must judge others' reactions not by his own, but with allowance for how others might react and not be regarded generally as acting without reason. This is the important difference, but one easy to ignore when the sense of guilt comes strongly from the record.
If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand....But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand."
*Kotteakos v. U.S.*, 328 U.S. 750, 764 -765 (1946) (internal citations omitted).

4

*Brecht* and *Kotteakos*, with the *caveat* that the burden of proof switches ... to the petitioner ...."). *Id.* at 1225. Because there were so many inversions and contradictions in the instructions on an element of the crime of murder, and the trial judge told the jury that all of his instructions were equal and were to be followed, it would be impossible to tell which of those instructions on malice the jury actually followed. This is not speculation or conjecture.

9. Even when one looks at the *Ortiz v. Dubois* case, M.O.D. at 2, one finds that the standard used by the court applies favorably to petitioner. The standard in that case was based on *United States v. Frady*, 456 U.S. 152, 170 (1982). There, defendant Frady challenging his first-degree murder conviction in a 28 U.S.C. § 2255 petition , claimed that the trial judge gave erroneous instructions involving malice, which in turn affected the jury's consideration of a potential conviction of manslaughter instead of murder. He was faced with a "procedural default" defense. But in applying a test of "prejudice" calling for Frady to show that the errors "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions," *id.*, the court stated

> At the outset, we emphasize that this would be a different case had Frady brought before the District Court affirmative evidence indicating that he had been convicted wrongly of a crime of which he was innocent. But Frady, it must be remembered, did not assert at trial that he and Richard Gordon beat Thomas Bennett to death without malice. Instead, Frady claimed he had nothing whatever to do with the crime. The evidence, however, was overwhelming, and Frady promptly abandoned that theory on appeal. *Frady I*, 121 U.S.App.D.C., at 95, 348 F.2d, at 101. Since that time, Frady has never presented colorable evidence, even from his own testimony, indicating such justification, mitigation,

5

> or excuse that would reduce his crime from murder to manslaughter.

*Id.* at 171 (emphasis supplied). In stark contrast to Frady, petitioner Lynch took the witness stand at the state court trial and gave "affirmative evidence indicating that he had been convicted wrongly of a crime for which he was innocent." His evidence and his trial counsel's closing amounted to an assertion that the decedent's death was without malice, and there is no question that the evidence required the trial judge to give instructions on mitigating circumstances negating malice. See Reply and Supporting Memo at 2-3, 13-17, text and n. 10. Under the test in *Frady*, where the instant case is the "different case" in the Supreme Court's view, the erroneous and self-contradictory instructions on the burden of proving/disproving mitigating factors negating malice "worked to [petitioner's] actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."

10. As to Ground Two and Ground Three, the court misapprehends the amount of importance of Dr. Kiley's and Kimberly's potential evidence on the findings and conclusions of the motion-to-suppress judge (Steadman, J.) who, it is to be recalled, was not the trial judge. No fair reading of Judge Steadman's decision on the motion to suppress could lead one to infer that the evidence of Pat and Don was established or did not need further support, especially where Judge Steadman very clearly indicated that he gave their evidence no credence or weight as to Lynch's having been drinking all during the day and concluding early in the evening just before he was arrested that day. [A.81-82, pars. 13-17; A.86, par. 14, last two sentences] The motion judge, in effect, treated Pat's and Don's testimony as though they had not testified at all. This court, furthermore, did not discuss, and apparently did not consider, petitioner's request for evidentiary hearing and the reasons therefor. Reply and Supporting

6

Memo at 62-64. And the court apparently did not consider petitioner's ex-parte motion for funds (docket number 17) in connection with his request for evidentiary hearing, and his reply to respondent's opposition to conduct discovery and for an evidentiary hearing (docket number 19). The evidentiary hearing is justified under the law and the facts and would show the court that petitioner's claims are not based upon speculation or on "tenuous chain of events." M.O.D. at 5.[3]

11. The court also misapprehends the status of the information petitioner has placed before the state courts and this court. There is no doubt that his appellate counsel's affidavit on what Kimberly and Dr. Kiley told him is hearsay in that form. Appellate counsel's affidavit was presented to the courts as an offer of proof, along with other materials as offers of proof, to support and justify his request for an evidentiary hearing on the Ground Two and Ground Three claims. Reply and Supporting Memo at 30-31, 62-64.

12. It is plainly unrealistic to conclude, without the benefit of an evidentiary hearing, "that Dr. Kiley's written evaluation did not support counsel's assertions." M.O.D. at 4. Dr. Kiley's duty at the time of petitioner's arraignment was to evaluate petitioner as to competence to stand trial. He performed the evaluation in the morning of January 5, 1993, between 10:00a.m. and noon, about twelve-fourteen hours after petitioner's interrogation the night before. Recall, please, that Judge Steadman's main factual concern was the time, i.e., the "hiatus" between

---

[3] For a very recent, local, view as to the legal and practical viability of having an evidentiary hearing and allowing a motion for funds in connection therewith, in a federal habeas court after the state court refused to hold one, See *Lopez V. Commonwealth of Massachusetts*, Civil Action 01-11207-WGY, U.S. District Court, District of Massachusetts, Memorandum and Order (12/03/2004, docket Number 29), Motion for Funds (12/9/2004, docket number 30), Electronic Order granting motion (entered 12/10/2004).

petitioner's last drink and his interrogation. ["Findings of Fact," A.81, pars. 9-10, A.82, pars. 16-17; "Rulings of Law," A. 86, par. 14, last two sentences, pars.15-16] Judge Steadman found "Dr. Lukes qualified to testify in this area." [A.86, par. 14, last sentence] Dr. Lukes' had opined that petitioner, at the time he was being interrogated, would be in the beginning of detoxification and withdrawal, with possible seizures, observable jitteriness and shaking, probably very anxious, probably nervous, and probably with abdominal pain. Petitioner's thought process would be rambling: he would be "unable to choose," and not focus. His judgment and reasoning would be adversely affected, his memory would be deteriorating, and he could begin confabulating (mixing fact with fiction). Petitioner's free will and volition would be compromised, and he would be open to psychological coercion. With all this, one might not be able to see an unsteady gait or a slurring of speech [A. 136-147].

Dr. Lukes, therefore, could explain at an evidentiary hearing how a person with petitioner's particular history, make up and characteristics could be in the compromised condition the night before as described above, and yet appear to Dr. Kiley to be alert, to speak with a normal rate of speech, to have connected thought processes, unimpaired concentration and unimpaired reality testing twelve to fourteen hours later. Recall, also, that Dr. Kiley's written report noted that petitioner displayed "some bodily tremors," and that his range of affect was "no lability." [A.304]

Dr. Kiley, in addition, would be expected to say at an evidentiary hearing (as he told appellate counsel) that petitioner appeared to be 'hung over," that he observed petitioner to be shaking during the interview, and that he appeared to be in a great deal of discomfort from withdrawal of alcohol. [A.290, par. 9(h)] Kimberly's potential evidence would have shortened the "hiatus" , i. e., from fourteen hours, as found by the judge without having had the benefit of Kimberly's and Dr. Kiley's evidence, to about four hours, with the benefit of their evidence. One

cannot properly assess, without an evidentiary hearing at which Kimberly, Dr. Kiley, and Dr. Lukes will testify, the weight this missing evidence would have had on Judge Steadman. Dr. Lukes would be expected to say at the evidentiary hearing that Kimberly's and Dr. Kiley's evidence is consistent with the opinion that he gave at the suppression hearing. [A. 292-293, par. 9(m)]

13.  The court also misapprehends the import of any conclusions made in the state courts. The grounds under discussion are based on claims of ineffective assistance of counsel. These present a mixed question of law and fact. See Reply and Supporting memo at 10. And where this missing evidence was not brought before Judge Steadman, the original factfinder, the court should apply the four factors from (Terry) Williams v. Taylor, 529 U.S. 362 (2000). See Reply and Supporting Memo at 11.

14.  Lastly on these grounds, the court misapprehends the role of the judge in the suppression hearing when it speaks of the missing evidence as needing to be "so persuasive that the ... judge necessarily would have been compelled to accept Dr. Lukes' opinion ...." M.O.D. at 5. In the suppression hearing, under the circumstances, the Commonwealth had the burden of proving beyond a reasonable doubt that petitioner's statements should not be suppressed. [A.82-87, "Rulings of Law", pars. 1, 4, 6, 17] Since Kimberly's and Dr. Kiley's potential evidence form a firmer basis for Dr. Lukes' opinion, it is highly likely that Judge Steadman would have had a reasonable doubt if he had the benefit of their evidence. Even if Kimberly had testified without Dr. Kiley, there is no apparent reason for the judge to find her evidence not credible. Finding her evidence credible, there is no apparent reason for the judge not to accept Dr. Lukes' opinion with this new evidence added to the basis for same, at least to the point where the judge would have a reasonable doubt whether petitioner's statements where voluntarily

made and whether he knowingly, voluntarily and intelligently waived his right to remain silent.

15.  Regarding Ground Four, whatever the SJC concluded on the matter is not to be taken as the kind of determination requiring deference, as the underlying claim presents a mixed question of fact and law. If the SJC deferred to the trial judge, who "found that the decision to reenact the struggle was 'not manifestly unreasonable' and 'was a valid tactical decision,'" M.O.D. at 5-6, it misses the point. See Reply and Supporting Memo at 59-62. Had the reenactment been conducted within the range of competence, there is a reasonable probability that the result of the proceeding would have been different.[4]

CONCLUSION

Based upon the foregoing argument and all of the docketed materials previously submitted by the petitioner, the court should vacate

---

[4] The court seizes upon and uses against petitioner an isolated statement in petitioner's discussion where he used the phrase "an accurate demonstration ... might have been helpful in raising reasonable doubt on the murder charge," M.O.D. 6, as if that is petitioner's only argument on effect of a more accurate demonstration. But in other parts petitioner states: "The defendant's argument is that a juror would have been more likely, upon such evidence, and upon proper instruction, to find self-defense or manslaughter ... Had the reenactment been conducted within the range of competence, there is a reasonable probability that the result of the proceeding would have been different." Reply and Supporting Memo at 59. Petitioner ends the section by stating: "Here, some other action would have better protected [the petitioner] and was reasonably foreseeable as such before trial. *Beasley v. United States, supra* 491 F.2d 696" (internal quotation marks omitted). Reply and Supporting Memo at 62.

the order of dismissal, and the petition for writ of habeas corpus should be granted on a single ground or cumulative effect of two or more grounds or, in the alternative, petitioner's motion for discovery and request for evidentiary hearing should be granted. Petitioner also requests such other or further relief as to this court is meet and just under the circumstances.


Respectfully submitted, Edward H. Lynch Jr.,
by his attorney,

_____ 12/27/2004
EMANUEL HOWARD; BBO# 241740
P. O. Box 66067
Newton, MA  02466-0002
TEL:  (617) 965-3042;  FAX (617) 965-3793

## CERTIFICATE OF SERVICE

I hereby certify that, on the date written below, I served a copy of the petitioner's motion for reconsideration upon the respondents by mailing it first class prepaid to their counsel as listed below.

Eva M. Badway
Assistant Attorney General
Criminal Bureau
One Ashburton Place
Boston, Ma 02108


_____ 12/27/2004


Lynch  Mot. Reconsideration U.S.D.C. Dec. 2004 -XP